**IN THE UNITED STATED DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**RAYMOND B. PITTS**                                                  **PLAINTIFF**

**VS.**                                              **CAUSE NO. 5:18-cv-75-DCB-MTP**

**MANAGEMENT & TRAINING CORPORATION,**
**and  JOHN AND JANE DOES 1-100**                           **DEFENDANTS**

**FIRST AMENDED COMPLAINT**
*Jury Trial Demanded*

1.     This Amended Complaint is brought by Raymond B. Pitts (hereinafter, "Plaintiff"), by and through undersigned counsel, against Management & Training Corporation, and John and Jane Does 1-100.

**JURISDICTION AND VENUE**

2.     Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution.  Subject Matter Jurisdiction is also appropriate based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the claim is in excess of $75,000.00.  The Court also has pendent jurisdiction over the Plaintiff's state law causes of action.

3.     Venue is appropriate in this Court as all acts and/or omissions occurred in Wilkinson County, Mississippi, which is located within the Southern District of the United States District Court, Western Division.

**PARTIES**

4.     Plaintiff, Raymond Pitts, is an adult incarcerated at the South Mississippi Correctional Facility (hereinafter, "SMCI"), located in Leakesville, Mississippi.

5.      Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, was given a contract by the Mississippi Department of Corrections ("MDOC") in July 2013 for the management and oversight of Wilkinson County Correctional Facility's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards.   MTC's 5,545 employee corrections division operates twenty-four (24) correctional facilities throughout the United States, with seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies.  The acts, omissions and events giving rise to Plaintiff's complaint occurred under MTC's management.  MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

6.      The Plaintiff is ignorant as to the identities of Defendants, John and Jane Does 1-100, who are unknown MTC officers, employees, agents, and or servants.  Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendant herein, and were acting with the permission and consent within the course and scope of said agency and employment.

**FACTS**

7.      During the time of the incident given rise to this cause of action, the Plaintiff was incarcerated at Wilkinson County Correctional Facility ("WCCF"). MTC had entered into a

contract with MDOC to operate WCCF on or around July 2013. On July 20, 2017 the Plaintiff was on P-Zone which is the protective custody unit at WCCF. The Plaintiff was on protective custody because he had used a cell phone which later became lost. The Plaintiff was unable to pay for the cell phone. The cell phone was the property of a either the Simon City Royals or Gangster Disciples. These two gangs are commonly referred to as Security Threat Groups ("STG"). As a result of the Plaintiff being unable to repay the STG's for the lost cell phone a "bounty" was placed on him.

8. On July 10, 2017 the Plaintiff's cellmate was taken from the cell to shower. The MTC employee who took the Plaintiff's cellmate failed to lock the Plaintiff's cell door. Inmate Trenton McCroy was then let out of his cell by an MTC employee for some unknown reason. Upon information and belief McCroy was a member of the Simon City Royals and sought to collect on the "bounty" which had been placed on the Plaintiff. At approximately 6:30 p.m., McCroy came into the Plaintiff's unlocked cell and assaulted him causing severe injuries including broken bones and facial lacerations.

9. MDOC and MTC policy requires that two correctional officers escort offenders when they are moved from their cells. MTC and MDOC policy require that the offenders be restrained when escorted. Additionally, MDOC and MTC policy require that correctional officers lock the cell doors. Upon information and belief, MTC employees violated these policies which caused and/or contributed to the Plaintiff's assault. McCroy was allowed out of his cell without two MTC correctional officers being present. Additionally, McCroy was not restrained and was allowed to enter the Plaintiff's cell because it was not properly locked.

10. After being attacked, the Plaintiff was left in his cell bleeding, with a guard returning hours later with Band-Aids for his still bleeding wounds. Plaintiff was denied professional medical attention for three days. On the third day, he was ordered to be taken to

Centerville Health Systems where doctors performed a CT Scan that showed a broken nose, and fractured cheek. Health care professionals, at this time, were unable to stitch up the wounds or set the bones due to the time lapse. Plaintiff was referred to a facial surgeon at University of Mississippi Medical Center in Jackson, MS.

11.     Plaintiff was returned to WCCF and placed in medical segregation for 10-12 days, at which time he was moved to a segregation cell for 7-10 days while being denied phone calls, showers.

12.     Approximately a month later the Plaintiff was taken to University of Mississippi Medical Center and met the surgeon. The surgeon was ready to perform the necessary surgery on Plaintiff's face, but the MTC officer stated that he could not stay for surgery, and he was returned to WCCF and placed in Administrative segregation again.

13.     Plaintiff has still not received the facial surgery that was suggested by health care professionals.   Plaintiff continues to have issues with not only these injuries, but also the mental distress resulting from the attack and the total disregard for medical treatment.

## CONDITIONS AT WCCF

14.     Prior to the attack upon Plaintiff, which is the subject of this lawsuit, WCCF was besieged with gang violence and contraband.  The gang population was so out of control that gang members essentially controlled the prison.  WCCF Guards and other staff members assisted gang members by bringing in contraband.  In return, gang members would pay the WCCF employees via "green dot cards".  In addition, some WCCF employees were affiliated with gang members and afforded them favorable treatment and even aided and abetted the gang members in their illicit behavior.  Gang members were selling drugs, cell phones and other contraband with the assistance and/or approval of MTC employees.  The introduction of this contraband into the prison contributed to the atmosphere of violence in existence at the prison.

4

15.    It is well documented that cell doors in most of the units at the facility can easily be "rigged" to remain unlocked when shut—if the locks are operational in the first place—allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults.    There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged," or non-operational doors.    Defendant has historically failed to take adequate measures to ensure that the defective doors are replaced and has failed to supervise officers adequately to ensure that they routinely and effectively examine doors to check for rigging.

16.    MTC supervisors and employees, including guards, were aware that the vast majority of prisoners had altered the locks on their doors which allowed the prisoners to open their cell doors whenever they chose to.    Surveillance video exists showing prisoners moving around the prison at all hours of the night on numerous occasions when they were required to be locked down.    MTC employees simply turned a blind eye to such actions, either because they are being paid to "look the other way" or simply do not care.    MTC and its employees' actions constituted negligence, gross negligence and deliberate indifference to the safety of the prisoners, including the Plaintiff.

17.    Weapons, such as homemade knives, were readily available at WCCF.    Prisoners would utilize materials in the prison or get material smuggled in from guards.    Some prisoners had homemade knives which were the size of swords.

18.    WCCF is so violent that it is known as "The Killing Fields" by the some of the inmates. Inmate on inmate violence is common place. Inmates live in constant fear of being attacked.    The killings and assaults and brutal attacks of inmates like Raymond Pitts are not only foreseeable; they are inevitable.    Despite such conditions, MTC, inadequately staffs the prison with enough security officers.    Further, the security officers who are working are inadequately

5

trained and/or supervised.  As such, inmates live in constant fear of being attacked.  The Plaintiff's attack was not only foreseeable it was inevitable.

19.    MTC typically understaffs its prisons throughout the country.  On July 10, 2017, the date on which Raymond Pitts was attacked, there were either no MTC correctional guards in the pod or there were an insufficient number of guards.  WCCF is supposed to be a "direct supervision" prison meaning that the inmates must have constant supervision from MTC employees.  MTC has allegedly trained its employees on direct supervision polices yet MTC constantly understaffs WCCF making direct supervision impossible. Moreover, the hiring practices are insufficient to screen out people who are incapable of performing the job of being a prison guard or who are gang members who will unduly help and favor certain inmates who are gang members.  Further, the security officers who are hired are inadequately screened, trained, and supervised. This practice and policy of understaffing is negligent and grossly negligent to the inmates, specifically the Plaintiff. WCCF guards fail to maintain adequate supervision of inmates, and specifically failed to maintain adequate supervision of the pod where Raymond Pitts was attacked.  Even when guards witness inmate-on-inmate violence, they often fail to intervene to prevent the violence.  This is sometimes due to inadequate training and supervision and sometimes due to the fact that there are an insufficient number of guards to prevent or stop the violence.  Sometimes it is because guards are member of the gangs or are beholden to the gangs or inmates who are carrying out the violence.  To the extent any guards witnessed the actions that took place leading up to and during the attack on Plaintiff, they failed to intervene or call for help or do anything about it.

20.    MTC has been sued numerous times for similar conduct as alleged in this

Amended Complaint. Undersigned counsel has personally filed six (6) suits.[1] There have been many more inmate on inmate attacks prior to the this incident which did not result in a lawsuit, but which placed MTC and its policymakers on notice about the violent atmosphere existing at WCCF and the staff corruption which causes and/or contributes to this. Despite this knowledge, MTC's policymakers refuse to enforce policies and procedures to control and/or reduce inmate on inmate violence. Such actions by MTC's policymakers are negligent, grossly negligent and/or deliberately indifferent.

## GENERAL STATEMENT ON LIABILITY

21.     The conditions at WCCF described in this complaint were caused by the actions and inactions of MTC and MTC employees, including corporate management, WCCF management, WCCF supervisors, and WCCF guards.  Those conditions, and the actions and inactions of MTC, and MTC employees, caused the assault on the Plaintiff.  MTC, MTC employees' actions and inactions constituted negligence and gross negligence to the safety of the prisoners, including the Plaintiff.

22.     MTC, and MTC employees have a duty to the inmates, including the Plaintiff, to ensure their safety and to see that the prison was maintained in a lawful, safe, and sanitary condition, suitable for human occupation and free of the constant threat of violence, injury, and death. MTC, and MTC employees breached that duty and caused the injuries to the Plaintiff.

## § 1983 CAUSES OF ACTION

---

[1] List *Kendrick Walker v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:14-cv-98; *Jonsha Bell v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:16-cv-39; and *Jose Hernandez v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, Civil Action No. 5:16-cv-57, *Kimberly Colletti v. Management & Training Corporation*, In the Circuit Court of Wilkinson County, Mississippi Civil Action No. 2018-0079. *Sara Mauk v. Management & Training Corporation*, In the United States District Court for the Southern District of Mississippi, Western Division, 5:18-cv-00068-DCB-MTP, and *Harris v. Major Daniel, et al.*, the United States District Court for the Southern District of Mississippi, Western Division, 5:18-cv-00070-MTP.

1.    **Unconstitutional conditions of confinement, failure to train, supervise, staff and discipline**

23.    MTC is treated as a "municipality" for the purposes of complaints brought pursuant to 42 U.S.C. §1983. MTC can be held liable for the Plaintiff's injuries if there exists a policy or custom which caused a constitutional deprivation which can be attributed to MTC's policymakers. The 5th Circuit has defined a "policy or custom" as ["a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Bennet v. City of Slidell*, 735 F.2d 861, 862 (5th Cir 1984).

24.    MTC's policymakers, including the Warden, Deputy Warden and Doe Defendants 1-100, have established customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated clearly established constitutional rights of the Plaintiff, including but not limited to:

a)    Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b)    Plaintiff's right not to be deprived of liberty without due process of law;

c)    Plaintiff's right to be safe and protected from injuries while in Defendants' custody;

d)    Plaintiff's right to be protected by the prison officials and guards while under their control; and

e)    Plaintiff's right to be free from excessive and unreasonable force.

8

25.    As a direct and foreseeable result of Defendants' actions, Plaintiff suffered a brutal attack. The Plaintiff suffered severe physical injuries, emotional distress, mental anguish, as well as pain and suffering.

26.    Defendant MTC, by and through Doe Defendants 1-100 in their individual and official capacities, established customs, policies and practices which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein.  Defendant and the Doe Defendants were deliberately indifferent to the safety of the Plaintiff and other WCCF inmates. These policies created unconstitutional conditions of confinement.

27.    Such unwritten policies, customs and practices include but are not limited to the following:

a.    Inadequate and improper training, supervision and discipline of WCCF corrections officers;

b.    Inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who have improper relationships with inmates, specifically gang members and who routinely bring in contraband to those inmates creating a dangerous prison environment;

c.    Inadequate and improper procedures, policies and practices for investigating improper activities by WCCF correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations;

d.    Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WCCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent such conduct;

e.    Failing to enforce policies and procedures with regards to the management and control of Security Threat Groups in violation of MDOC policy;

f.    Failing to adequately staff WCCF with trained and qualified guards and allowing the prison to be understaffed leading to an increase in inmate on inmate assaults and death;

g.     Housing gang members with inmates who have renounced their gang affiliation or who are not gang affiliated;

h.     Failing to follow policies and procedures to eliminate and/or control the flow of contraband, including but not limited to drugs and shanks, in the prison leading to an increase in inmate on inmate violence;

i.     Failing to enforce the "direct supervision" of inmates by guards which leads to an increase of inmate on inmate violence;

j.     Failing to enforce the policy requiring guards to make security rounds to check on inmates which also leads to an increase of inmate on inmate violence.

28.    All the actions by MTC, its policymakers, and Doe Defendants 1-100 were done with deliberate indifference to the constitutional rights of WCCF inmates, specifically the Plaintiff. and caused and/or contributed to his injuries.

## 2.    <u>Ratification</u>

29.    MTC, its policymakers and Doe Defendants 1-100 were advised about the incident involving Plaintiff. MTC, by and through its policymakers, ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates including the Plaintiff, and systemic deficiencies that violated the Plaintiff's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

30.    Through these acts and omissions of ratification, MTC's policymakers were deliberately indifferent to the Plaintiff's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers

approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

31.     The ratification caused Plaintiff's injuries and damages in whole or in part as set herein.

<u>**PREMISES LIABILITY CLAIM**</u>

32.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 31. hereinabove.

33.     The Plaintiff was an invitee and MTC was at all times material a landowner as contemplated by Mississippi law.  Defendant was responsible for protecting the Plaintiff and other inmates from foreseeable assaults. The Plaintiff was a member of a class of persons for whom the jail was specifically designed and intended as a place of housing, "was a member of a specific branch of the public for whom the property was required to be maintained." *Carson v. Corr. Corp. of Am.*, No. 10-CV-01329-REB-BNB, 2011 WL 1656509, at *3 (D. Colo. May 3, 2011). The *Carson* Court held that a prisoner was an invitee under the Colorado Premises Liability Act.  Other jurisdictions have similarly held that prisoners are invitees. *See Wilkerson v. United States,* 2010 WL 1462542 at *5 (M.D. Pa. April 9, 2010) (citing *Graf v. County of Northampton,* 654 A.2d 131, 133–34 (Pa.Commw.Ct.1995)) (construing Pennsylvania law); *Schwensow v. United States,* 2010 WL 1064062 at *2 (E.D.Mich. Feb. 16, 2010) (construing Michigan law) (mag. judge op.), *adopted,* 2010 WL 1064006 (E.D.Mich. March 22, 2010).

34.     MTC knew or should have known that it failed to enact or implement policies and procedures to protect inmates, including the Plaintiff, and/or failed to adequately train and

11

supervise employees to protect the Plaintiff. Security guards failed to supervise inmates, failed to conduct rounds for security and safety and failed to intervene to prevent inmate on inmate violence.

35. All of this conduct is an unreasonable failure to exercise reasonable care to protect against dangers of which MTC knew or should have known. These violations directly caused, in whole or in part, the attack on Plaintiff and the injuries which were sustained from this attack.

## NEGLIGENT AND/OR GROSSLY NEGLIGENT HIRING AND SUPERVISION

36. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 35 hereinabove.

37. Defendant MTC had the responsibility and duty to supervise, oversee and control the training and job performance of jail staff and the operation of the prison. Defendant had the duty to see that the prison was maintained in a safe and sanitary condition, suitable for human occupation and compliant with constitutional requirements. The Defendant had the duty to ensure that the prison officials, jailers, and other jail staff acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States and did not deprive inmates of their rights guaranteed under the United States Constitution and laws. This included the duty to ensure that the conditions of inmate confinement did not deprive inmates of their right to be protected from assaults by other inmates.

38. Plaintiff alleges that the Defendant negligently, or grossly negligently, hired, supervised, and retained MTC employees, inter alia, by a) failing to care for and ensure the Plaintiff's safety while at WCCF; b) failing to properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent or

grossly negligent in their care and treatment of the Plaintiff and, as a direct and proximate result, the Plaintiff lost his eyesight.

## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

39.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 38 hereinabove.

40.    The Defendant, MTC and Does 1-100 acted with negligence, gross negligence, and/or intentionally allowed or failed to prevent the Plaintiff's assault on July 10, 2017.  At all times relevant, each Defendant owed an independent duty to the Plaintiff to ensure his safety, and the Defendants breached this duty.  The actions and inactions of the Defendant, and/or other WCCF correctional officers, led directly to the injuries of the Plaintiff.  MTC, as the employer for is liable for their employees' actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

41.    The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 40 hereinabove.

42.    The Defendant, MTC and Does 1-100, have acted in complete disregard for the safety of the Plaintiff by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

43.    The Defendant's actions exhibited gross negligence and direct disregard of the safety of the Plaintiff.   Punitive damages should be awarded against the Defendants. Defendants' tortuous actions have caused the Plaintiff's bodily injures, emotional distress, mental anguish and ultimately, loss of his life.

13

## **PRAYER FOR RELIEF**

The Plaintiff requests a jury trial and seeks the following relief:

a.      Compensatory damages of, from and against the Defendant, in amount to be determined by this Court;

b.      Punitive damages of, from and against the Defendant, in an amount to be determined by this Court;

c.      Reasonable attorney's fees and all costs of this Court;

d.      Pre and post judgment interest;

e.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 27th day of March, 2019.

RAYMOND PITTS, PLAINTIFF

BY:    */s/ Charles R. Mullins*
          CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
*Attorney for Plaintiff*