**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**RAYMOND B. PITTS**                                                    **PLAINTIFF**

**VS.**                                              **CAUSE NO. 5:18-cv-75-DCB-MTP**

**MANAGEMENT & TRAINING CORPORATION,**
**and  JOHN AND JANE DOES 1-100**                    **DEFENDANTS**

MOTION TO COMPEL

The Plaintiff, Raymond B. Pitts, requests that the Court enter an order compelling the Defendant, Management & Training Corporation ("MTC"), to provide certain discoverable information which is more fully described below.

BACKGROUND

1.      The Plaintiff was attacked by another inmate while he was an inmate at the Wilkinson County Correctional Facility ("WCCF") which is operated by MTC. The Plaintiff was on D-Zone which is the protective custody unit at "WCCF. Inmate Trenton McCroy was allowed out of his cell by an MTC employee for an unknown reason. Upon information and belief McCroy was a member of the Simon City Royals and sought to collect on the "bounty" which had been placed on the Plaintiff. At approximately 6:30 pm, McCrory came into the Plaintiff's unlocked cell and assaulted him causing severe injuries including broken bones and lacerations.

2.      MDOC and MTC policy requires that two correctional officers escort offenders when they are moved from their cells. MTC and MDOC policy require that the offenders be restrained when escorted.   Additionally, MDOC and MTC policy require that correctional officers keep cell doors locked at all times. Upon information and belief, MTC employees violated these policies which caused and/or contributed to the Plaintiff's assault. After being

1

attacked, the Plaintiff was left in his cell bleeding, with a guard returning hours later with Band-Aids for his still bleeding wounds. Plaintiff was denied professional medical attention for days.

3.　　　　The Plaintiff alleged that MTC and its employees are responsible for his injuries by, *inter alia*, failing to staff its prison with enough correctional officers, failing to train the officers that were on staff, failing to curtail the flow of contraband including shanks, and by failing to control the gangs which were housed at WCCF. Specifically, the Plaintiff alleged that MTC's supervisors were aware of these conditions and simply ignored them.

4.　　　　The Plaintiff's counsel has filed numerous cases against MTC and made the same allegations. These other lawsuits have confirmed these conditions at WCCF but MTC officials have, for the most part, denied them. However, on June 26, 2019 a news article brought to light that MTC officials were subjectively aware of these conditions because of an audit which was conducted in November 2018. The article also notes that MTC conducts similar audits on a routine basis. The November 2018 audit was very critical of MTC's staffing, hiring, and its failure to protect inmates from harm. A copy of this article is attached as Ex. "1" and incorporated herein. In the article, Defendant Jody Bradley is quoted as follows:

> Staffing shortages have been blamed for violent incidents in state prisons across the country, and without enough guards, prison systems often lockdown inmates, restricting them to their cells for weeks or even months.
>
> Bradley's response to this problem, according to the audit: "he speaks with the gang lords/leaders ***and asks them to 'control their men.'*** If they do not control the individuals on the unit, the Warden will place the unit on lockdown," which means prisoners are confined to their cells with no visits, no recreation, no meals in the cafeteria.
>
> Using gangs this way is just how Mississippi prisons operate, the warden said: ***"It ain't right, but it's the truth."*** He told auditors ***that the head of the criminal investigations division at the Mississippi Department of Corrections, who was not named, had encouraged him to partner with gang leaders.***

Ex. "1" (emphasis supplied).

The audit also noted that inmates reported to auditors that gangs were "in control" at WCCF:

> Officially, Mississippi has long had a zero-tolerance program for dealing with gangs such as the Vice Lords and the Gangster Disciples.
>
> But Wilkinson's gang leaders got special privileges. They determined who got jobs and other perks, auditors found; *they were escorted by their own security details as they moved around the 950-bed prison. They decorated their cells with gang paraphernalia. They were "the ones with the real control," according to the audit, which concluded that their power endangered both the inmates and the staff.*

*Id.* (emphasis supplied).

5.   After learning about this article, the Plaintiff propounded a Supplemental Request for production of Documents as follows:

> Please produce a copy of any and all audits, internal or external, conducted at the Wilkinson County Correctional Facility from 2013 to the present, by any organization, group, or individual including MTC, including but not limited to the May 2017 and November 2018 internal audits.

The Defendant answered on September 20, 2019 as follows:

> This Defendant objects to this request as it is vague, overly broad, unduly burdensome, and seeks information which is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case. Particularly to the extent this request seeks the production of this Defendant's internal audits at WCCF, the documents requested were not generated in response to and do not reference the incident forming the basis of this case. This Defendant further objects to this request to the extent it seeks information which constitutes self-critical analysis or self-evaluation for the purpose of self-improvement. Without waving any objections, reference is made to the 2016 PREA Audit Report and 2019 PREA Audit Report, which have been produced.

A copy of the specific request for production and MTC's response is attached as Exhibit "2".

6.      In an attempt to resolve the objections, the attorneys have had a good faith conference pursuant to F.R.C.P. 37(a)(1) and a telephonic conference with Magistrate Judge Mike Parker pursuant to F.R.C.P. 16(b)(3)(v). MTC agreed to produce some audits but not the audits after January 2018. Instead, the Defendant has submitted two post January 2018 audits to the Court to conduct an *in-camera* review.

7.      The Plaintiff requests that the Court enter an order compelling the Defendant to supplement its discovery responses by producing the post January 2018 audits. The request is clearly not irrelevant and is calculated to lead to the discovery of admissible evidence as it addresses issues contained in the Plaintiff's complaint. In addition, the "self-critical analysis" privilege MTC asserts is not recognized in this jurisdiction. The Mississippi Supreme Court rejected the self-critical privilege in 2005:

> The Diocese argues that documents it created for the purpose of self-analysis and criticism - that is, documents it created in an attempt to identify and address its problems - should be protected from disclosure as a matter of public policy. The obvious justification for such a privilege is that it would seem counterproductive to the interests of the public to discourage wrongdoers from making efforts to correct problems. Allowing the production of such documents would tend to discourage self-analysis, self-criticism, and thus self-improvement.
>
> The argument is novel in Mississippi and somewhat appealing. However, we find no case where the federal or state courts have recognized this privilege, and it is not included in the privileges enumerated in either the federal or Mississippi Rules of Evidence. The United States Court of Appeals for the Fifth Circuit has examined the privilege of self-critical analysis on several occasions, and has, on each occasion, declined to recognize it as a legal privilege. Its most recent decision held:
>
> As for the self-evaluation privilege, Fed.R.Evid. 501 states that privileges "shall be governed by the principles of the common law] as they may be interpreted by the courts of the United States in the light of reason and experience." Privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." The Fifth Circuit has not recognized the self-evaluation

4

privilege…. In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted).

Although we do not find the argument totally unpersuasive, we decline at this time to recognize or establish this privilege. Thus, self-critical documents may not be included in the privilege log discussed infra.

*Roman Catholic Diocese v. Morrison*, 905 So. 2d 1213, 1245, (Miss. 2005).

The Fifth Circuit Court of Appeals and district courts within the Fifth Circuit have never

recognized this exception:

'[n]either Louisiana courts nor the Fifth Circuit has embraced a self-critical analysis privilege . . ." *Hawthorne Land Co. v. Occidental Chem. Corp.*, Civ Action No. 01-0881, 2003 U.S. Dist. LEXIS 11430, 2003 WL 21510426, at *1 (E.D. La. June 24, 2003). Further, "[a]ll of the courts in this Circuit confronting the issue have declined to find that the self critical analysis privilege exists, *even in the instance of a post-accident investigation.*" *Ganious v. Apache Clearwater Operations, Inc.*, No. 98-207, 2004 U.S. Dist. LEXIS 2043, 2004 WL 287366, at *2 (E.D. La. Feb. 12, 2004). Moreover, subsequent remedial measures are discoverable. *Breaux v. Haliburton Energy Servs.*, Civ. Action No. 04-1636, 2006 U.S. Dist. LEXIS 66291, 2006 WL 2700057, at *2 (E.D. La. Sept. 18, 2006). Certainly, while some of the evidence sought by plaintiff may not be admissible at trial, *see* Fed. R. Evid. 407, that does not undermine its discoverability. *See* Fed.R.Civ.P. 26(b)(1); *Broussard v. Tetra Applied Techs., L.P.*, Civ. Action 09-1422, 2010 U.S. Dist. LEXIS 89480, 2010 WL 3463084, at *2 (W.D. La. Aug. 25, 2010) ("self-critical analysis" privilege does not provide a valid reason for withholding production of documents). Defendants' objections are overruled.

*Dennis v. Collins*, 2016 U.S. Dist. LEXIS 127492, *8-9

8.      Additionally, just because the audits took place subsequent to the Plaintiff's

incident does not make them irrelevant. As the Court knows, this is a civil rights lawsuit brought

under *42 U.S.C. § 1983*. The Plaintiff has generally alleged that the conditions at the conditions

at WCCF were "unconstitutional" and that MTC failed to protect him from harm while he was

incarcerated in the prison.  The Plaintiff has alleged that MTC failed to train and supervise its

guards (as well as the inmates), failed to adequately staff its prison, and failed to maintain the prison in a safe fashion.

9.      Finding MTC liable under the theories stated above is a heavy burden.  MTC is treated as a municipality for 1983 purposes. A municipality is liable under *§ 1983* for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.  Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (en banc), *aff'd per curiam* on reh'g 739 F.2d 993 (5th Cir. 1984) (*en banc*).

10.      The custom, practice or policy of the governmental entity must actually cause a deprivation of constitutional rights. See *Monell*, 436 U.S. at 690-92; *see also Mahoney v. City of Jackson*, 2008 WL 2990906, *5 (S.D. Miss. July 25, 2008).  For MTC to incur liability for the acts of its employees, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Mahoney*, 2008 WL 2990906, at *4 (quoting *Webster*, 735 F.2d at 841); *see also Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).  Additionally, the United States Supreme Court has held that the inadequacy ***must be blatantly obvious*** before policymakers can

be held liable for violation of constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (emphasis added). "Inadequacy of . . . training can serve . . . as the basis for municipal liability under § 1983, but only if the failure to train amounts to a deliberate indifference to the rights of individuals who come into contact with the police." *O'Neal v. City of San Antonio*, 344 Fed. App'x 885, 888 (5th Cir. 2009) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). The Fifth Circuit Court of Appeals has repeatedly held that "if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that "this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers." *O'Neal*, 344 Fed. App'x at 888 (quoting *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992).

11.     MTC also has a duty to provide adequate staffing and supervision. "Confinement in a prison where terror reigns is cruel and unusual punishment. A prisoner has a right to be protected from the constant threat of violence...." *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir. 1981) ("*Jones II*") (internal citations omitted). To provide such protection, jail officials must supervise prisoners by providing adequate numbers of qualified security staff and may not leave prisoner safety to the prisoners themselves. *See Gates v. Collier,* 501 F.2d 1291, 1309-31 (5th Cir. 1974); *Jones v. Gusman,* 296 F.R.D.416, 431-33 (E.D. La. 2013) (holding that relief was warranted to address "mutually reinforcing effect" of inadequate classification, staffing, and other security components).

12.     Also, in order to establish liability Plaintiff must be able to prove that the government official or employee acted (or failed to act) with deliberate indifference. "Under *City of Canton,* 489 U.S. at 389, 109 S. Ct. at 1205, in order to prove the city's deliberate indifference, [a plaintiff] must show that the failure to train reflects a 'deliberate' or 'conscious'

choice to endanger constitutional rights." *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998). The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999). "In order to carry this heavy burden, 'the plaintiff must generally demonstrate at least a pattern of similar violations.'" *Pearson v. City of Louisville*, 2008 WL 4814051, at *3 (N.D. Miss. Nov. 4, 2008) (quoting *Monell,* 436 U.S. at 691). In other words, Plaintiff has the burden to show this Court that the alleged constitutional violation (*i.e.* – inmate-on-inmate violence / delay in medical care) was the "highly predictable consequence of a *particular* failure to train." *Estate of Thornton v. Rankin Cnty.*, No. 3:13cv620-DPJ-FKB, 2015 WL 1650237, at *4 (S.D. Miss. Apr. 14, 2015) (quoting *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014) (emphasis in original).

13.     The Plaintiff intends to show MTC's unconstitutional customs, policies and procedures in large part by relying upon the documents which MTC seeks to exclude. *Shepherd v. Dallas County,* 591 F.3d 445 (2009) is dispositive of the issue. Shepherd was an inmate in the Dallas County Jail. He claimed he was denied medical care which led to him suffering a stroke. At trial he relied upon two (2) reports which were created *after* his denial of medical care. Dallas County hired an outside medical company to perform a comprehensive review of the jail's health services. The resulting report was extremely critical of the jail and its medical treatment towards inmates. The second report was a 2006 Department of Justice Report ("DOJ Report") which found that the jail failed to adequately care for the needs of inmates.

14.     The trial court allowed the documents into evidence and the jury rendered a verdict for the Plaintiff. On appeal, the Defendant argued that the DOJ report was inadmissible under 403. With regard to 403, the Fifth Circuit said

*the report's relevance cannot be seriously doubted*. Shepherd alleged that medical care at the jail was constitutionally inadequate, and the report's recitation of facts and findings provide strong support for that claim. The findings that the County now contests (the record shows that County officials did not challenge them in meetings with the DOJ in Washington) are well-grounded in facts obtained through personal observation of the jail during several visits, interviews of jail personnel, and reviews of jail policies and procedures, incident reports, grievances, and medical records. *Though the report was released in 2006, it describes incidents going back to 2002*. In particular, it reports numerous specific incidents of failure to provide adequate medical care that occurred shortly before, during, and shortly after the period of Shepherd's detention from late 2003 to early 2004. *Further, several witnesses testified that the report accurately reflected jail conditions at that time or that conditions had changed little between late 2003 and early 2006.* (emphasis supplied).

*Id. @ 445 (emphasis supplied).*

15.     Subsequent events can be relevant and admissible in not only civil rights cases but other cases as well. *Shepherd, supra,* upheld the use of subsequent reports including a DOJ Report. In *Grandstaff v. City of Boyer, Texas,* 767 F.2d 161 (5th Cir. 1985), the Fifth Circuit wrote the following about subsequent conduct in § 1983 cases:

> [a]s subsequent conduct may prove discriminatory motive in a prior employment decision, [cite omitted], and subsequent acts may tend to prove the motive of a prior conspiracy, [cite omitted], so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his pre-existing disposition and policy.

*Id. at 171. See also Beck v. City of Pittsburg,* 89 F.3d 966 (3rd. Cir. 1996) (Excessive force complaint filed after the Plaintiff's incident "may have evidentiary value for a jury's consideration whether the City and policy makers had a pattern of tacitly approving the use of excessive force."); *Foley v. City of Lowell, Mass.,* 948 F.2d 10, 14 ("actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident." Citing *Bordano v. McCleod,* 871 F.2d 1151 (1st Cir. 1989)).

9

The November 2018 audit reveals not only a continued unconstitutional policy, custom and practice, but also continued deliberate indifference.

16.     It is important to note that the above cases were dealing with the ***admissibility*** of such evidence at trial. For discovery purposes, there is a much lower threshold to consider and that is whether the evidence in question will lead to the discovery of admissible evidence. Subsequent remedial measures are also discoverable (the Plaintiffs submit that MTC did not make any subsequent remedial measures) although the admissibility of these audits at trial may be an issue. "Moreover, subsequent remedial measures are discoverable. *Breaux v. Haliburton Energy Servs.*, Civ. Action No. 04-1636, 2006 U.S. Dist. LEXIS 66291, 2006 WL 2700057, at *2 (E.D. La. Sept. 18, 2006). Certainly, while some of the evidence sought by plaintiff may not be admissible at trial, see Fed. R. Evid. 407, that does not undermine its discoverability. *See Fed.R.Civ.P. 26(b)(1)*". The Plaintiff submits that MTC must produce all audits including those which occurred after the Plaintiff's assault. The audits shed light on the ongoing problems at MTC before, during, and after the Plaintiff's incident with regards to the training and supervision of its guards as well as the failure to protect inmates like the Plaintiff.

17.     The Plaintiff requests that the Court order MTC to produce the documents requested. The Plaintiff asks for any and all other relief as the Court deems appropriate including attorney fees and costs.

RESPECTFULLY SUBMITTED, this, the 4th day of October, 2019.

Respectfully submitted,

RAYMOND PITTS, PLAINTIFF

BY: /s/ *Charles R. Mullins*
CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
Email: chuckm@coxwelllaw.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, Charles R. Mullins, attorney of record for the Plaintiff in the above-styled and referenced matter, do hereby certify that I have this date filed the above and foregoing, with the Clerk of the Court and electronic mail to all known counsel of record.

THIS, the 4th day of October, 2019.

/s/ Charles R. Mullins
CHARLES R. MULLINS